**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH F. MARZANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:19-cv-2660 |
| | ) | |
| NATIONS RECOVERY CENTER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>COMPLAINT</u>**

1.      Plaintiff, Joseph Marzano, brings this action against Defendant, National

Recovery Center, Inc. ("NRC"), to secure redress for Defendant's violations of the Fair Debt

Collections Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), which prohibits debt collectors

from engaging in abusive, deceptive, and unfair collection practices, the Telephone Consumer

Protection Act, 47 U.S.C. § 227 ("TCPA"), and state law.

2.      The TCPA is a federal statute that broadly regulates the use of automated

telephone equipment.  Among other things, the TCPA prohibits certain unsolicited marketing

calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking

authority to the Federal Communications Commission ("FCC").

3.      The FDCPA broadly prohibits unfair or unconscionable collection methods,

conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in

connection with debt collection attempts. It also requires debt collectors to give debtors certain

information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

4.      In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the

use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive

debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. §1692(a).

5.     Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated."  *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

6.     The FDCPA encourages consumers to act as "private attorneys general" to

enforce

the public policies and protect the civil rights expressed therein.  *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

7.     Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq*.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1337 and 1367,  15 U.S.C. §1692k (FDCPA), and 47 U.S.C. § 227 (TCPA).

9.     Venue is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District, where the Defendant regularly transacts business.

## PARTIES

10.     Plaintiff, Joseph F. Marzano, is a natural person who resides in the Northern District of Illinois.  He is a consumer within the meaning of the FDCPA, as defined at 15 U.S.C. §1692a(3).

11.    Defendant, Nations Recovery Center, Inc. (hereafter, "NRC") is a Georgia corporation that regularly conducts business in both Arizona and Illinois.   NRC has a business address of 6491 Peachtree Industrial Blvd., Atlanta, GA, 30360. It does business in Illinois.  Its registered agent and office is Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

12.    NRC operates a collection agency.  Its principal business purpose is the collection of debts for others.

13.    NRC has a web site on which it states, "Why More of Your Customers Pay Nations Recovery Center / We provide superior recovery using innovative methods and continuously evaluating new procedures." (http://www.natrecovery.com/)

14.    NRC holds itself out to be a nationwide debt collector that employs 150 debt collectors, whose performance is "second to none" in "large portfolio" services including debt recovery, medical debt collection, bankcard collection, retail debt recovery, commercial debt collections. http://www.natrecovery.com/index.php/features/nrc/whyus

15.    NRC regularly collects or attempts to collect debts owed or due or asserted to be owed or due another and is a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. §1692a(6). NRC attempts to collect and does collect alleged debts from Illinois and Arizona consumers.

**FACTS**

16.    In about May 2018, shortly after Mr. Marzano moved back to Illinois from Arizona, he began receiving telephone and written communications from NRC claiming to be collecting a debt on behalf of a third-party, CACH, LLC, with a "current balance" of $24,837.64

for Account #XXXXXXXX4702.

17.     On or about June 15, 2018, NRC sent plaintiff the letter attached as Exhibit A. The letter was addressed to Mr. Marzano at his former Arizona address but was received by him in Illinois.

18.     Plaintiff had no knowledge of the purported CitiFinancial Account or CACH LLC account. He never incurred a debt to CitiFinancial or CACH LLC.  Later calls to Citibank and Citifinancial's successor after Plaintiff obtained counsel indicated that they could not locate an account tied to Plaintiff's name and personal identifiers.

19.     Not only did NRC harass Mr. Marzano by telephone repeatedly about a debt that did not belong to him, its agents threatened to contact his employer, report the debt to credit reporting agencies, to garnish his wages, and to threaten to take other adverse action if Mr. Marzano did not tell them his social security number.

20.     Mr. Marzano disputed the validity of the debt with NRC's agent Leonard Jamison and Kevin Baker by email and telephone.   NRC's agents told Mr. Marzano they would continue to "come after him" despite his disputes, because "you're the one we found."

21.     In response, in or about May of 2018, Mr. Jamison sent to Mr. Marzano an email with a dunning letter attached as well as a copy of a purported default judgment in the amount of $15,299.71, from Cook County, IL, dated Dec. 21, 2011.

22.     On December 21, 2011, Mr. Marzano lived in Sun City, AZ.

23.     Exhibit A stated that it was "submitted for your records as a current statement of account," which words appear on the communication as the very first sentence and lead the least sophisticated consumer to believe that it is an account statement rather than a debt collection

letter.

24.     The letter is not simply an "current statement of account" for Mr. Marzano's records, but instead it was a dunning letter.

25.     At the time, there was a judgment entered against a Joseph Marzano for a much smaller amount.  However, Plaintiff  believed that judgment was against his father, who shares the same name, and/or resulted from identity theft.  That judgment was recently vacated, after Mr. Marzano's counsel submitted proof he was never served, among other things. The docket reflects that Mr. Marzano was not living at the address where process was served by substitute service upon a friend of Mr. Marzano's father at the Crestwood, IL address.

26.     The dunning letter and collection calls were communications from a debt collector for the purpose of collecting a personal or household debt.

27.     The dunning letter does not itemize the amounts of money purported to be principal, interest, fees and costs.  The number listed in the letter does not match the amount of the judgment, which was $15,299.71 as of December 21, 2011, and it is impossible to tell from the letter how the debt had increased to almost $25,000.

28.     Meanwhile, NRC debt collectors continued to call Mr. Marzano in order to harass and scare him into making payments on a debt that he did not owe and threatening to alert his new employer, which he believed would jeopardize his job and livelihood.

29.     Believing that he had no other option, Mr. Marzano asked his cousin to borrow $500 to pay to NRC because he believed that NRC was going to "contact his employer" and "garnish his wages" imminently.

30.     Mr. Marzano continued to fear for his employment and that NRC would continue

to threaten and harass him until he paid a large amount of money despite the fact that he did not owe it.

31.     Additionally, NRC failed to provide a "notice of debt" as required by 15 U.S.C. §1692g(a).

32.     Mr. Marzano disputed the debt and told NRC that it wasn't his.

33.     NRC uses technology and deploys tactics to locate consumers, their family members, and even people with similar names or similar identifying characteristic that may not be the correct consumer, which is possibly what happened to Mr. Marzano.

34.     Whether NRC has identified the correct consumer is immaterial, NRC used threats and harassment against Mr. Marzano and other consumers to squeeze money out of them.

35.     NRC is part of the massive debt-buying industry, which purchases old and stale debts, often known as "zombie debts," many of which it has no way of knowing whether the debts are legitimate.

36.     As of sometime in 2018, the Consumer Financial Protection Bureau had received over 3200 complaints against abusive debt collection by NRC's parent company, Resurgent, with 1,420 of such complaints alleging that Resurgent attempted to collect debts not owed and making false statements or representations.

37.     In addition to the letter, Defendant began placing calls to Plaintiff's cellular phone number, in an attempt to collect the alleged debt.

38.     On or about May 21, 2018, Plaintiff answered one such call from Defendant.

39.     Plaintiff heard a pause before a collection agent began to speak, indicating the use

of an automated telephone dialing system.

40. Plaintiff spoke with a representative of Defendant, who informed Plaintiff that NRC was attempting to collect a debt.

41. During that call, Plaintiff asked for specific information about the alleged debt.

42. After receiving additional calls from Defendant, Plaintiff requested that the calls to his cell phone to cease.

43. Despite his request, Plaintiff continued to receive calls on his cellular phone.

44. Between May and June of 2018, Plaintiff received more than 7 calls from Defendant.

45. Each call was preceded by a pause before the collection agent began to speak, indicating the use of an automated telephone dialing system.

46. Plaintiff received  autodialed debt collection calls from at least four different automated NRC phone numbers: 678-259-0024; 678-248-0006; 770-234-0101; 800-935-1139.

47. Sometimes the Plaintiff would answer the call, sometimes he would not.  Each time he answered the call, Defendant's representative informed Plaintiff that it was attempting to collect a debt.

48. Plaintiff, for the second time, asked for calls to his cell phone to cease. Mr. Baker informed Mr. Marzano that NRC was recording the call and that if Mr. Marzano did not provide his social security number, NRC would garnish his wages.  Mr. Marzano refused to provide his social security number.

49. Shortly thereafter, and despite Mr. Marzano informing NRC to stop calling him, Mr. Baker called back to threaten Mr. Marzano again that he would tell the court that Mr.

Marzano failed to provide his social security number.

50.     Mr. Marzano felt threatened and scared, and despite having told NRC to stop calling and that he didn't want to give his social security number, Mr. Marzano was harangued into doing so by Mr. Baker.

51.     Plaintiff has never given Defendant his cell phone number to Defendant and is unaware how it obtained his phone number.  Plaintiff has never authorized Defendant, CACH LLC, or CitiFinancial to contact him on his cell phone.

52.     Defendant's call times to the Plaintiff indicated the use of a predictive dialer.

53.     Predictive dialers utilize statistical algorithms to control call output in a given amount of time, seeking to optimize the chances that a caller will connect with a debtor.

54.     A predictive dialer registers real-time call statistics to dynamically change outbound dialing.

55.     Each predictive dialing platform has variations in its predictive algorithm to optimize the chance that a debtor will answer.

56.     Initially, at the outset of the Defendant's calls to the Plaintiff, Defendant's calls were randomized, in order to aid the algorithm in determining when the Plaintiff was most likely to answer.

57.     After a few days of randomized calls to attempt to create a better understanding of when Plaintiff was likely to answer, the algorithm switched to a targeted call time (i.e. consistently calling the Plaintiff around the same time every day), indicating the use of a predictive dialer.

58.     For example, after Defendant was successful reaching Plaintiff at a certain time of

day, the calls became targeted to that time of day, indicating the use of a predictive dialer.

59.     As a result of Defendant's conduct, Plaintiff has sustained actual damages including but not limited to, loss of $500, and emotional and mental pain and anguish.

60.     At the time the calls were being made, Plaintiff had recently became employed in a job where he has his cellular phone nearby him at all times.

61.     Due to Defendant's incessant calls, Plaintiff had to begin to ignore all incoming calls and risked missing important calls.

62.     Defendant's conduct induced physical injury as a result of stress, anxiety details on this], and embarrassment in his place of work.  The phone calls have affected Plaintiff's work by ringing during his working hours and causing Plaintiff to silence his phone at times when he should be able to answer his phone.

63.     Defendant knew that it did not have authorization to contact the Plaintiff on his cell phone, and that by use of the predictive dialer and incessant calls, it would embarrass and harass him into making payments of money that he did not owe.  Defendant's techniques were not in error, but were intentional or in reckless disregard of the rights of the Plaintiff.

## COUNT I – FDCPA

64.     Plaintiff incorporates paragraphs 1-63.

65.      The Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692d, 1692e, 1692f and 1692g by:

> a.      Repeatedly causing Plaintiff's phone to ring with the intent to annoy or harass Plaintiff about a debt he told Defendant did not belong to him;
>
> b.      Threatening to communicate with Plaintiff's employer regarding the debt;

    c.        Threatening to notify the "court" that Plaintiff would not supply his social security number;

    d.        Failing to properly itemize the amount demanded, making it impossible to tell if the number demanded is correct and making it harder to identify the source of the debt; and

    e.        Failing to provide the disclosures required by §1692g..

66. The Defendant made the improper calls and sent the dunning letter in connection with the collection that contained false and deceptive statement that it was collecting on a judgment against the Plaintiff in violation of the FDCPA.

67. As a result of these violations, Plaintiff experienced emotional distress, sleeplessness, anxiety, fear, humiliation, loss of concentration, stress in his relationships, lost wages, lost attorney's fees, and other economic and non-economic damages.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendant for:

    i.        Statutory damages;

    ii.        Actual damages;

    iii.        Attorney's fees, litigation expenses and costs of suit;

    iv.        Such other and further relief as the Court deems proper.

## COUNT II – TCPA

68. Plaintiff incorporates by reference paragraphs 1-63.

69. The Plaintiff had no relationship whatsoever with Defendant or any predecessor in interest.

70.     Within four years prior to the filing of this action, on multiple occasions, Defendant violated 47 U.S.C. § 227 (b)(1)(A)(iii), which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice - to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

71.     Within four years prior to the filing of this action, on multiple occasions, Defendant willfully and/or knowingly contacted Plaintiff at Plaintiff's cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and as such, Defendant knowing and/or willfully violated the TCPA.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against the Defendant for:

        i.      Statutory damages of $1500 per call;

        ii.     An injunction against further violations;

        iii.    Costs of suit;

        iv.    Such other or further relief as the Court deems just and proper.

**COUNT III  – ILLINOIS CONSUMER FRAUD ACT**

72.     Plaintiff incorporates by reference paragraphs 1-63.

73.     Defendant engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by:

        a.     Repeatedly causing Plaintiff's phone to ring with the intent to annoy or

harass Plaintiff about a debt he told Defendant did not belong to him;

    b.    Threatening to communicate with Plaintiff's employer regarding the debt;

    c.    Threatening to notify the "court" that Plaintiff would not supply his social security number;

    d.    Failing to properly itemize the amount demanded, making it impossible to tell if the number demanded is correct and making it harder to identify the source of the debt;

    e.    Failing to provide the disclosures required by §1692g.

    f.    Willfully and/or knowingly contacting Plaintiff at Plaintiff's cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system.

74.    Defendant's actions were oppressive and contrary to public policy.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against the Defendant for:

    i.    Actual damages;

    ii.    Punitive damages;

    iii.    An injunction against further violations;

    iv.    Attorney's fees, litigation expenses and costs of suit;

    v.    Such other or further relief as the Court deems just and proper.

+

        /s/Daniel A. Edelman
        Daniel A. Edelman

Daniel A. Edelman

Cathleen M. Combs
Tara L. Goodwin
Paul M. Waldera
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.  All rights relating to attorney's fees have been assigned to counsel.


/s/*Daniel A. Edelman*
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

-14-

## DOCUMENT PRESERVATION DEMAND

      Plaintiff hereby demands that Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

                                        */s/Daniel A. Edelman*
                                        Daniel A. Edelman

.

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that April 19, 2019, I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to all counsel of record.

/s/ *Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Tara L. Goodwin
Paul M. Waldera
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)